## SPROUL et ux. v. FARMERS' NAT. BANK OF FOLLETT. (No. 2063.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 10, 1923.)

1. Homestead ⬳181(2)—Intent to abandon proven by declarations of claimant.

Where defendant executed a note and trust deed on April 4, 1921, his declarations and those of his wife made prior to that date as to their intention of moving from land were admissible as showing an intent to abandon their homestead.

2. Trial ⬳396(6) — Finding that husband's trust deed was not intended to fraudulently deprive wife of homestead immaterial.

In suit to foreclose a deed of trust, a finding that the husband did not intend to fraudulently deprive his wife of her homestead exemption was immaterial in view of other findings that at the time the deed was executed neither husband nor wife resided on the premises, and that they had, prior to the date of the deed, abandoned land as a homestead with the intention of removing from the state and never to reoccupy it as a home.

3. Homestead ⬳181(3) — Evidence held to show wife's concurrence in abandonment.

In suit to foreclose a deed of trust executed by a husband, evidence *held* sufficient to show concurrence of the wife in abandonment of the homestead.

Appeal from District Court, Lipscomb County; W. R. Ewing, Judge.

Action by the Farmers' National Bank of Follett against J. B. Sproul and wife. From a judgment for plaintiff, defendants appeal. Affirmed.

E. C. Gray, of Higgins, for appellants.

John Payne, of Perryton, W. H. Sewell, of Lipscomb, and Adkins & Kimbrough and Chas. H. Keffer, all of Amarillo, for appellee.

HALL, C. J. The appellee bank sued appellant Sproul to recover upon a promissory note in the sum of $2,300 dated April 4, 1921, due August 1, 1921, stipulating for interest at 10 per cent., and containing the usual provision for attorney's fees. It also sought a foreclosure of a deed of trust lien upon the north half of a section of land situated in Lipscomb county, and described in the petition. The appellant Sproul, joined by his wife, answered, alleging in substance that at the time of the execution of the note and deed of trust 200 acres of the land described in the appellee's petition was and is now their homestead; that the note was not executed for any part of the purchase money for the property; that they had never abandoned their homestead; that the premises described had been their homestead for more than 10 years before the execution of the deed of trust; that they had not acquired a residence or homestead at any other place; that they were unable to procure work in the vicinity of their home and were compelled to temporarily lease the same and go elsewhere to procure work in order to earn a living for themselves and their three children. By supplemental petition the appellee denied that the west 200 acres of the half section was the homestead of the appellants at the time of the execution of the deed of trust, and in this petition sought a foreclosure of the lien upon only the 200 acres claimed as exempt. There was a trial to the court without a jury, resulting in a judgment against the appellants for the full amount of the principal of the note, interest, and attorney's fees, and a foreclosure of the deed of trust lien upon the 200 acres claimed by the appellants as a homestead.

[1] The first proposition to be considered is that the court erred in permitting the plaintiff to prove statements of the defendants and each of them made some time prior to the 4th day of April, 1921, as to their intention of moving from the land in controversy. Proof of said declarations was elicited from the neighbors of the appellants and various parties with whom they transacted business about that time. This testimony was admissible for the purpose offered. It is said in McMillan v. Warner, 38 Tex. 414, that the intent to abandon a homestead may be proven by the declarations of the homesteader, made before, at the time of, and after leaving his home. See, also, Boehm v. Beutler, 16 Tex. Civ. App. 380, 41 S. W. 658; Cline v. Upton, 59 Tex. 29; Woolfolk v. Ricketts, 48 Tex. 28.

[2] Objection is made to the court's finding No. 4 to the effect that in the execution

of the deed of trust by J. B. Sproul he did not intend fraudulently or unfairly to deprive his wife of her homestead exemption. The objection to this finding is that there is neither pleading nor proof to sustain it. The objection, of course, is well taken, but the finding itself is immaterial. Mrs. Sproul did not charge that her husband had executed the mortgage with the fraudulent intent of depriving her of her homestead. In view of other findings of the court that at the time the deed of trust was executed the appellants and neither of them resided upon the premises in controversy, and that they had, prior to that date, abandoned the land as a homestead, with the express intention of removing permanently from the state of Texas to the state of Oklahoma, where they have ever since resided, and with the intention to never again reoccupy the land as a home, the finding upon the issue of fraud becomes immaterial.

[3] The remaining propositions all attack the sufficiency of the evidence to support the judgment. It is true that Sproul and wife both testified that they did not abandon the home or leave it with the intention of never again living upon it, and occupying it as a home. The statement of facts is voluminous, and practically all of the evidence bears upon this issue. Appellee introduced nine different witnesses, many of them contradicting Sproul and wife in material parts of their testimony. The following is about the substance of the evidence upon which the trial court based his conclusion that the homestead had been abandoned, and we think it is sufficient to sustain the judgment:

It was shown that Mrs. Sproul, prior to the execution of the deed of trust, had left home on two different occasions, abandoning her husband and children for several weeks each time. She stated to Mrs. Haines, one of her neighbors, that her husband had found out that she would not live on the farm. Just before the execution of the bill of sale Sproul had printed some handbills, advertising the fact that he would, on a certain day, sell his live stock and other personal property, for the purpose of moving to Oklahoma, and he made no attempt to plant a crop upon the farm prior to April 1st, the date of the sale. He had tried to obtain a loan from several parties upon the land and had been informed that he could not negotiate a loan because the property was his homestead. He told the witness Cupps, prior to the execution of the deed of trust, that his intentions were to leave the place and move away, whether he could sell it or not, and that, if he could not sell it, he wanted to mortgage it, because his wife would not live with him on the place. He told Berg that he had planned to abandon the farm and move right away because his wife did not like to live on the farm, and that they were going to move to town. The witness Hall testified that

Sproul told him when in the bank on the morning of April 4th just before the execution of the deed of trust that he had now abandoned the place and requested Hall to go ahead and get a loan from the Renfrew Investment Company, which he had previously applied for. He further stated to Hall that he had agreed with his wife when she came back home after her last abandonment of him that they would sell the personal property and leave the place. The witness Farmer testified that Sproul told him at the time of the execution of the deed of trust that he was moving to Oklahoma and that, when the president of the bank insisted that he stay on the place and promised to take care of him financially if he would stay, Sproul said he would rather not stay, but preferred to move off. It was shown that before and after Sproul and wife moved to Oklahoma they listed the place for sale, stating that they wanted to sell it for the purpose of paying off their indebtedness, that at no time did either of them ever say anything that indicated they intended to return and occupy the land as a homestead. The witness Hicks testified that in a conversation with Sproul, shortly before the occasion of the sale of his personal property, he had made an application for a loan, and that Sproul stated that he was going to Oklahoma, and that after having his domestic troubles he did not feel like staying in Texas and facing the people, and that they desired to get out of the town and country as quickly as possible. Mrs. Sproul made the same statement to witness Laubahan. If the testimony of Sproul and wife as to their intention is disregarded, the evidence is sufficient to sustain the court's conclusion that there was an abandonment of the homestead, and, since the appellants were discredited upon several material points by the testimony of disinterested witnesses, we must conclude that the court disregarded their evidence upon the issue of intention. The question of intent in such cases is one of fact and is to be determined from the consideration of all the surrounding circumstances. The question has been before the courts so often that we deem it unnecessary to enter into an extended discussion of it. The evidence is sufficient to show the concurrence of Mrs. Sproul in the abandonment, and his action in executing the deed of trust and in moving off the place seems to have been prompted, if not impelled, by her refusal to occupy the home with him. Without further discussion we cite the following cases as bearing upon the issues made by the pleadings and evidence: Derry v. Harty et al. (Tex. Civ. App.) 187 S. W. 343; White v. Epperson, 32 Tex. Civ. App. 162, 73 S. W. 852; Edmonson v. Blessing, 42 Tex. 601; Bishop et ux. v. Williams et al. (Tex. Civ. App.) 223 S. W. 512; Hudgins v. Thompson, 109 Tex. 423, 211 S. W. 586; Slavin v. Wheeler, 61

Tex. 654; Smith v. Uzzell, 56 Tex. 318; Wynne v. Hudson, 66 Tex. 9, 17 S. W. 113.

We find no reversible error, and the judgment is affirmed.