### RAN et al. v. CITY NAT. BANK OF DECATUR. (No. 11091.)

(Court of Civil Appeals of Texas. Fort Worth. March 21, 1925. Rehearing Denied April 25, 1925.)

1. **Mortgages** ⬅461—Notes and mortgages, evidencing prior indebtedness, held admissible to show indebtedness previously secured by vendor's lien.

In suit on notes, secured by deed of trust on land claimed to constitute homestead, notes and chattel mortgages, evidencing prior indebtedness between mortgagor and mortgagee, which had become merged in note sued on, *held* admissible to show what part of amount secured was advanced to take up indebtedness secured by vendor's lien.

2. **Appeal and error** ⬅1050(1)—Admission in evidence of notes and chattel mortgages, evidencing prior indebtedness between mortgagor and mortgagee, held not prejudicial.

In suit on note, secured by deed of trust, admission in evidence of notes and chattel mortgages, evidencing prior indebtedness between mortgagor and mortgagee, which had become merged in note sued on, *held* not prejudicial, where mortgagor did not deny such indebtedness.

3. **Homestead** ⬅181(2)—Statements and admissions of owners, subsequent to execution of deed of trust, held admissible to prove abandonment of homestead.

Statements and admissions of owner and his wife, after executing note and deed of trust on farm showing their intent to abandon such place as their homestead, *held* admissible in rebuttal of their testimony that they did not intend to abandon farm, and to show that when they left it they had no fixed intention to return there again to occupy it as a residence for the family.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(272 S.W.)

**4. Homestead ⚖➙162(1)—Owners must leave with fixed intention not to occupy farm as homestead to constitute abandonment.**

To show an abandonment of a farm as a homestead, it was necessary to show that owners left farm with a fixed intention not to occupy it longer as such.

**5. Appeal and error ⚖➙882(14)—Submission of general instructions in cause submitted on special issues not ground for reversal, when objection not made at time.**

Though suit was submitted on special issues, court's submission of general instructions *held* not ground for reversal, where no objection was made when case was submitted to jury as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 1971, and defendants requested two special issues containing general instructions similar to those given by court, although requested issues were not given.

**6. Homestead ⚖➙216—Instruction held to cover every material point relating to homestead defense.**

In suit on note, secured by deed of trust, in which defendants claimed a homestead, instruction *held* to fully and fairly cover every material point relating to defense, including that of abandonment of homestead.

**7. Homestead ⚖➙13 — Owner cannot claim an urban and country homestead at same time.**

Owner cannot claim as exempt property an urban and a country homestead at the same time.

**8. Homestead ⚖➙181(2)—Homestead designation admissible on question of abandonment of mortgaged property as homestead.**

In suit on note, secured by deed of trust, in which defendant claimed a homestead, defendant's designation of other property as his homestead, though not a statutory designation, was admissible on question of abandonment of homestead, which he claimed in mortgaged property.

**9. Trial ⚖➙252(15)—Instruction as to whether owner in abandoning mortgaged property as homestead did so to defraud wife, held properly refused under the evidence.**

In suit on note, secured by deed of trust, in which defendant claimed a homestead, instruction, as to whether defendant in abandoning mortgaged property as a homestead did so to defraud his wife, *held* properly refused, where there was no evidence of such fraud.

**10. Homestead ⚖➙181(1)—Burden not on plaintiff to sustain plea of abandonment of homestead by preponderance of evidence.**

In suit on note secured by deed of trust, in which defendant claimed a homestead, burden was not on plaintiff to sustain its plea of abandonment of mortgaged property as a homestead by a preponderance of evidence, where uncontroverted evidence showed an abandonment thereof, unless defendant had an intention of returning thereto after he had occupied other property.

Appeal from District Court, Wise County; F. O. McKinsey, Judge.

Action by the City National Bank of Decatur against G. C. Ran and others, in which the Decatur National Farm Loan Association intervened. From the judgment, defendants Ran appeal. Affirmed.

J. A. Templeton, of Fort Worth, and H. E. Lobdell, of Decatur, for appellants.

N. W. Burch, of Decatur, for appellee.

DUNKLIN, J. G. C. Ran and wife, Bertha Ran, have appealed from a judgment in favor of the City National Bank of Decatur, foreclosing a mortgage lien on a tract of 258¼ acres of land situated in Wise county, about 8½ miles in a southeasterly direction from the town of Decatur.

The principal defense urged by the defendants, G. C. Ran and wife, was that 200 acres of the land was their homestead at the time the deed of trust was executed and was exempt from forced sale under the Constitution and statutes of the state. The questions presented on this appeal will involve that issue.

The note for which the mortgage was given was dated December 18, 1919, signed by the defendant G. C. Ran, made payable to the plaintiff, the City National Bank of Decatur, and was for the principal sum of $10,548.45, maturing October 18, 1920. The mortgage, dated December 19, 1919, was in the form of a deed of trust, and was executed and properly acknowledged by both defendants. By supplemental petition, plaintiff alleged that, prior to the date of the execution of the note and deed of trust, the defendants had abandoned the tract of land in controversy as their homestead, and that they, together with their children, had moved from the land into the town of Decatur with the intent not to return or again occupy the land as a homestead, and that it was not their homestead at the time the note and deed of trust were executed. The plaintiff further alleged in that connection that, after the defendants had abandoned the land and moved to Decatur, they acquired a new homestead in that town by purchase of 8 acres of land situated in the town of Decatur; that said purchase was by deed of conveyance, dated September 1, 1919; that at the time of the execution of the note and deed of trust, defendants were actually occupying, using, and claiming the 8-acre tract in the town of Decatur as their homestead, and had so claimed and occupied it ever since its purchase.

Plaintiff further alleged that defendants were estopped from claiming the land as their homestead by reason of representations made by them to the plaintiff, at the time the note and deed of trust were executed, that they had abandoned the land as a home-

⚖➙For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

stead with intention not to return, and had acquired a new home and residence in the town of Decatur, which residence they were then and there claiming as their homestead; which representations were relied on by plaintiff as true and induced plaintiff to extend the credit indicated by the note. In that connection plaintiff further alleged that, at the time defendants made those representations, they executed and delivered to plaintiff a written designation of the Decatur property as their homestead, which designation contained this stipulation:

"Said tract of land above described being land on which we have lived and occupied as our homestead hereby disclaiming any homestead interest in any other land."

Said written designation of homestead was dated December 19, 1919, signed by both defendants and duly acknowledged before a notary public in statutory form. It was alleged that plaintiff relied upon said written designation of the homestead as well as upon the oral declarations made by the defendants to the same effect.

The pleadings of the parties and the evidence introduced upon the trial all showed that in consideration of the execution of the note and mortgage sued on, the plaintiff advanced sums of money to be applied upon purchase-money notes held by other parties and secured by vendor's lien upon the land, and the sums so advanced were included in the principal notes sued on; the balance of said principal being for money theretofore loaned to G. C. Ran by the plaintiff and secured in part by chattel mortgage liens upon personal property, which plaintiff also sought to foreclose. The Federal Land Bank of Houston, who held a vendor's lien note against the land in controversy, was also made a party defendant for purposes of foreclosure of the lien claimed by the plaintiff.

The Decatur National Farm Loan Association filed a plea of intervention, in which it adopted a part of the answer of the Federal Land Bank of Houston, containing allegations that the defendant G. C. Ran owned 365 shares of stock in the Federal Land Bank of Houston, of the aggregate value of $365, in which the intervener has an interest, and which was given as additional security for the debt owing by the defendant G. C. Ran to the Federal Land Bank of Houston. The intervener prayed for a determination of its rights in said stock.

The judgment rendered contained specific provisions to the effect that the foreclosure of plaintiff's lien was subject to the prior and superior lien of the Federal Land Bank of Houston for the principal sum of $7,300, and that the intervener owned the 365 shares of stock, and the foreclosure of plaintiff's lien was without prejudice to the claim of intervener to that stock. There is a further statement in the judgment that neither the Fed-

eral Land Bank of Houston nor the Decatur National Farm Loan Association prayed for any judgment further than the one decreeing that their respective interests be protected. No complaint is made on this appeal of that portion of the judgment relating to the Federal Land Bank of Houston or the intervener, and, accordingly, those parties will not be further noticed.

Appellants admit that a portion of the debt, evidenced by the note sued on, was for money advanced to be applied on a prior debt secured by a vendor's lien, and that plaintiff would be entitled to a foreclosure of the lien to that extent, independently of the defense of homestead. But they strenuously resist the foreclosure of the lien for the balance of the debt.

The jury made the following findings in answer to special issues: (1) At the date of the execution of the deed of trust, the defendants' homestead was on the 8 acres of land in the town of Decatur. (2) The officers of the plaintiff bank, who acted for it at the time the deed of trust was executed, in good faith believed that the defendants had abandoned the land in controversy as their homestead, and that at that time the 8 acres of land in Decatur was then their homestead. (3) Such belief of said officers was induced in whole or in part by the written designation of homestead pleaded by the plaintiff and introduced in evidence. (4) They would not have advanced the money to take up the vendor's lien notes against the land held by other persons but for the execution and delivery of said designation of homestead. (5) Said officers believed the said designation of homestead had been made by the defendants in good faith. (6) They relied in whole or in part upon said designation of homestead. (7) At the time the defendant, Mrs. Ran, signed and acknowledged the designation of homestead, she understood that the execution of the same was to designate the 8 acres of land in Decatur as the homestead of the family, and to disclaim homestead rights in the land in controversy. (9) Warren Lillard, the cashier of plaintiff bank, who conducted the negotiations with the defendants, did not, as an inducement to G. C. Ran to procure from his wife, Bertha Ran, her signature to the deed of trust and designation of homestead, state and represent that the execution of the papers was to be a temporary affair under which the federal loan could be secured, and that he and his wife would not lose their homestead rights in the land in controversy by executing said papers.

[1, 2] The note sued on was a renewal in part of a prior indebtedness owing by G. C. Ran to the bank. Such prior indebtedness was originally secured by chattel mortgages on divers items of personal property, but that property had been disposed of and the proceeds of sale had been applied to those debts as shown by a written agreement be-

tween the parties which was introduced in evidence. Complaint is made of the admission in evidence, over defendants' objection, of former notes of ·G. C. Ran to the bank, and of the chattel mortgages given to secure the same, on the ground that the same was irrelevant, immaterial, and calculated to prejudice the jury against the defendants, since the property covered by the chattel mortgages had all been sold and the proceeds of the same had been received by the bank, and since all of those notes had been merged into the note sued on and defendants did not question the amount due. The evidence was properly admitted in order that plaintiff might show just what amount included in the note sued on was advanced to take up other indebtedness that was secured by a vendor's lien on the land, in other words, to separate the indebtedness so secured from that which was unsecured. Furthermore, we fail to see how such evidence could have been prejudicial to the defendants, in any event, since they did not deny the indebtedness.

[3, 4] On November 28, 1921, G. C. Ran submitted to the bank what is called a financial statement showing that he owned the land in controversy, the amount of indebtedness outstanding against it secured by mortgage, the value of the land, the amount of his equity therein, and included in the statement was the 8 acres of land in Decatur, its value being listed at $2,500, with indebtedness outstanding against it in the sum of $1,700. The document also contained the statement that G. C. Ran then regarded the 8 acres in Decatur as his homestead. That statement was admitted in evidence over defendants' objection that it was an ex parte statement of G. C. Ran, executed long after the date of the deed of trust, on which foreclosure was sought, and because the same was not admissible to affect the homestead rights of Mrs. G. C. Ran, or for any other purpose and was highly prejudicial to the defendant. At the time the evidence was admitted, the court instructed the jury that they could not consider it for any purpose, except as tending to show the intent in the mind of G. C. Ran at the time he executed the deed of trust, and the designation of homestead. The court refused the defendants' request for an instruction that the financial statement was admitted for the sole purpose of enabling them to determine the credibility and weight to be given to the testimony of G. C. Ran.

On cross-examination by plaintiff's counsel, G. C. Ran was also questioned about the statement shown in what is called the financial statement, referred to above, to the effect that the 8 acres of land in Decatur was his homestead, and in answer to those questions he denied knowing that such a statement was contained in that document at the time he signed it. The defendants objected

272 S.W.—33

to that testimony on the same grounds that were urged to the admission of the document itself. Two exhibits, signed by Mrs. Ran, were introduced in evidence. Those exhibits showed that Mrs. Ran's children were listed in the school census in the Decatur school district for the years 1922 and 1923. The exhibits showed the names, ages, dates of birth, and nationality of the children and the names of their parents, and that they resided in that school district. Mrs. Ran also testified on cross-examination by plaintiff's counsel that she signed those lists. Defendants objected to the testimony as being irrelevant and immaterial for any purpose, and highly prejudicial to them. The court overruled the objection, but instructed the jury that those exhibits and the testimony of Mrs. Ran were admitted for the sole purpose of shedding light on the intent and purpose of Mrs. Ran at the time she and her husband executed the deed of trust sued on, if they believed that such evidence had that effect.

S. A. Lillard, cashier of the plaintiff bank, testified that in October or November, 1921, he went out to Mrs. Ran's home in Decatur to see about the assignment to the bank of certain life insurance to secure G. C. Ran's indebtedness, and that in that conversation Mrs. Ran told him that the house in Decatur was all that the defendants had. The testimony was objected to by the defendants on the ground that it was irrelevant and immaterial, and highly prejudicial to them, and further because the conversation occurred long after the execution of the deed of trust, and that statements, made subsequently to the execution of the deed of trust, could not affect its validity or invalidity. The court overruled the objection but instructed the jury that they could not consider it for any purpose, except as tending to impeach the testimony of Mrs. Ran, if they believed it had that effect.

Notwithstanding the fact that statements and admissions of G. C. Ran and wife referred to above were made subsequently to the execution of the deed of trust, and although the material issue to be determined by the jury was whether or not the land in controversy was the homestead of the defendants at the time the deed of trust was executed, yet we do not believe that error was committed in admitting proof of those statements. The proof showed that defendants had formerly lived upon the farm, but that, prior to the execution of the deed of trust, they had moved into the town of Decatur, and bought 8 acres of land which they had occupied and used as a place of residence ever since. Those facts, in connection with the execution of the designation of homestead at the time the deed of trust was executed, and other declarations which Lillard testified that defendants made at the time, tended strongly to support the plaintiff's pleading of abandon-

ment of the land in controversy as a home-stead before the execution of the deed of trust. In order to constitute such abandonment, it was necessary to show that the defendants left the farm with a fixed intention not to occupy it longer as a homestead. The defendants both testified to the effect that they moved into Decatur, bought the 8 acres in that town and lived upon it as a temporary arrangement for sending their children to school, and with full intention to return to the farm and occupy and claim the same as their homestead after that temporary purpose was accomplished. And we believe that the evidence now under discussion was all admissible not only in rebuttal of such testimony of the defendants, but also as original evidence to show that, when the defendant lef the farm, they had no fixed intention to return to it and again occupy it as a place of residence for the family. White v. Epperson, 32 Tex. Civ. App. 162, 73 S. W. 851; Calvin v. Neel (Tex. Civ. App.) 191 S. W. 791; Sanders v. Sheran, 66 Tex. 655, 2 S. W. 804; Thornton v. Wear (Tex. Civ. App.) 202 S. W. 1038; Sproul v. Bank (Tex. Civ. App.) 246 S. W. 1081.

[5, 6] Special issue No. 1, submitted by the court to the jury, reads as follows:

"At the date of the execution of the deed of trust, dated December 19, 1919, to secure defendant's indebtedness to plaintiff, which was the homestead of the defendants, the place in the country or the place in Decatur? (a) In this connection I instruct you that the defendants could not have at the same time a homestead in the country and a homestead in town. (b) And I further instruct you that the husband had the right to select and determine the homestead of the family, provided he did so in good faith and not in fraud of the homestead rights of his wife; and if you believe from the evidence that after the defendants had acquired by purchase the house and lots in town, they occupied and used said house and lots as a place of residence and as a home for the family, and that at the date of the execution of said deed of trust defendant's family was occupying and using said house and lots as a residence and house, and that at that time the defendant G. C. Ran had abandoned the land in the country as a homestead, and had the fixed intention to make the house and lots in Decatur the homestead of his family, you will find that the property in Decatur was the homestead of the defendant, even though you may believe and find from the evidence that the defendant Mrs. Ran had not assented thereto; and in determining the issue above submitted, you may look to all the facts and circumstances in evidence bearing on that issue. (c) On the other hand, if you believe from the evidence that at the date of the execution of said deed of trust the defendant G. C. Ran had moved his family to the house and lots in Decatur, and that they were then living thereon, yet if you further believe that at that time the defendant G. C. Ran did not have the intention to permanently abandon the place in the country as a homestead, but that he and his family were only temporarily living in Decatur for school purposes, and that at said date it was the intention of the defendant G. C. Ran at some time in the future to move his family back to the farm and to occupy and use the same as a homestead for his family, then and in the event you so believe and find from the evidence you should answer the above issue by stating that the land in the country was the defendant's homestead."

Complaint is made of the instruction above copied in the following language:

"Where a cause is submitted on special issues, it is not only improper but is reversible error to submit general instructions, either in connection with or independent of, the issues so submitted."

A sufficient answer to this assignment is the fact that the objection now made to the charge was not made to the judge at the time the case was submitted to the jury. By article 1971, Vernon's Sayles' Ann. Civ. St. 1914, it is expressly provided that:

"Objections shall in every instance be presented to the court before the charge is read to the jury, and all objections not so made and presented shall be considered as waived."

And the following decisions have enforced the provisions of that statute; Waggoner v. Zundelowitz (Tex. Com. App.) 231 S. W. 721; Borden v. Pelipchyk (Tex. Civ. App.) 243 S. W. 1109; Garcia v. Hernandez (Tex. Civ. App.) 226 S. W. 1099, and numerous other decisions which might be cited. Furthermore, counsel for defendants requested two special issues containing general instructions to the jury to guide them in making their findings in answer to special issue No. 1, which were of the same general character as the ones given by the court, although those requested issues were not given.

Numerous objections were made to the substance of the general instructions given in connection with issue No. 1, and those objections are made the bases of several assignments of error presented here. One of the objections is that the instruction was not authorized or warranted by the facts introduced in evidence in that the evidence raised an issue or tended to show that the purpose and intention of G. C. Ran in executing the deed of trust and homestead designation was for the sole purpose of enabling him to execute a deed of trust while the land was still occupied by the defendants and being used by them as their homestead.

Another objection was that the instruction authorized the jury to find that the defendant Ran had the right to abandon the homestead for himself and his family merely by his intention so to do, and destroy the homestead right of his wife without her knowledge or consent, and without regard to his good faith in so doing.

Another objection was that since the undisputed proof showed that the 8 acres in the

town of Decatur was incumbered by a vendor's lien for $1,700 of the purchase money, which incumbrance Ran has never been able to remove, the same could not constitute a homestead.

Another objection was that the instruction authorizes a finding of abandonment of the farm as a homestead, notwithstanding Ran's intention may have been only to make the Decatur property a temporary home for the purpose of schooling his children.

Another objection was that the instruction ignores the intent of defendant Bertha Ran on the issue of abandonment. Another was that it authorized a finding that the defendant G. C. Ran could dispose of his homestead in the country by placing a mortgage thereon in opposition to the wishes of his wife and in fraud of her rights; and another was that it authorized Ran by mere declaration of intention to use the property in Decatur as a homestead to constitute that property his homestead.

Without undertaking to discuss those objections in detail, we will say that we think the charge was a full and fair instruction, covering every material point relating to the homestead defense, including that of abandonment, and that the court did not err in overruling those objections. We will say further in this connection that the evidence amply supports the finding of the jury in answer to issue No. 1.

[7-9] Furthermore, the evidence was sufficient to support the findings of the jury on the issue of estoppel, notwithstanding the fact that, at the time of the execution of the deed of trust, G. C. Ran was cultivating his farm while living with his family in the newly-acquired home in the town of Decatur; and notwithstanding the further fact that the plaintiff's cashier, who took the deed of trust, knew of such use of the farm. The property in the town of Decatur was more strongly impressed with the homestead character than the farm at the time the deed of trust was executed. It is settled law that a person cannot claim as exempt property one urban homestead and another homestead in the country at the same time. The statute gives a person residing in the country and owning more than 200 acres of land the right to make a written designation of homestead claim on at least 200 acres, but there is no statute relating to such a designation of homestead in a city or town. While the homestead designation introduced in evidence could not be considered as a statutory designation, it was at least admissible on the issues presented and found by the jury. And it being merely evidence bearing on those issues, the court did not err in refusing defendants' request for an instruction that the same was not legally binding upon them as a statutory homestead designation. Nor was there error in refusing the requested instruc-

tion requiring a finding by the jury as to whether or not G. C. Ran, in abandoning the land in controversy as a homestead, did so for the purpose of defrauding his wife, since there was no evidence tending to support the issue of such fraud.

[10] Nor do we believe that there was error in refusing the defendants' request for an instruction to the jury that the burden was upon the plaintiff to sustain its plea of abandonment of the homestead by a preponderance of the evidence. While it is true that the plaintiff specially pleaded the issue of abandonment, the evidence showed without controversy that the defendants did leave the farm and acquire a home in the town of Decatur, where they moved with their family and have lived ever since. To say the least, that was proof of abandonment of the most cogent character, unless the defendant Ran, in leaving the farm, had the intention of returning to it after he had occupied the town property while his children were going to school. His intention in the matter, if it was otherwise than as indicated by the physical facts, was peculiarly within his own mind, and under those circumstances we think the court was warranted in refusing to give any charge as to the burden of proof on the issue of abandonment. Blum v. Strong, 71 Tex. 322, 6 S. W. 167; Royal Neighbors v. Fletcher (Tex. Civ. App.) 230 S. W. 476; Rowe v. Ry. Co. (Tex. Civ. App.) 205 S. W. 731; White v. Dabney (Tex. Civ. App.) 46 S. W. 653; Stooksbury v. Swan, 85 Tex. 563, 22 S. W. 963; Kuehn v. Kuehn (Tex. Civ. App.) 259 S. W. 290.

Complaint is made of the refusal of some other requested issues on the homestead defense which will not be discussed in detail, since all the material points to which they relate were fully and fairly covered in the court's charge to the jury.

We have been cited to no decisions, and have found none sustaining the contention, that the 8 acres of land in Decatur, purchased by the defendant Ran, could not be the legal homestead of the family, in view of the fact that it was incumbered by a vendor's lien for $1,700 of the purchase money. That argument would apply to the land in controversy with equal force, because it was even much more heavily incumbered.

Furthermore, the evidence was ample to support the jury's findings on the issues of estoppel, all of which were determined in favor of the plaintiff, and the following authorities support that defense. Parrish v. Hawes, 95 Tex. 185, 66 S. W. 209; Moerlein v. Scottish Mortgage Land Inv. Co., 9 Tex. Civ. App. 415, 29 S. W. 162, 948; Parker v. Schrimsher (Tex. Civ. App.) 172 S. W. 166; White v. Dabney (Tex. Civ. App.) 46 S. W. 653; Ferguson v. Smith (Tex. Civ. App.) 206 S. W. 966; Turrentine v. Doering (Tex. Civ. App.) 203 S. W. 802.

For the reasons noted, all assignments of error are overruled, and the judgment is affirmed.